[S. F. No. 14838. In Bank.—August 29, 1933.]

JAMES P. BULGER, Petitioner, v. INDUSTRIAL ACCI-
DENT COMMISSION and SHREDDED WHEAT
COMPANY (a Corporation), Respondents.

Grove J. Fink and John B. Connolly for Petitioner.

Arthur I. Townsend for Respondents.

SEAWELL, J.—Petition by James P. Bulger, after order
denying a rehearing, praying for a review of an order made

by the Industrial Accident Commission denying petitioner compensation rating for an injury alleged to have been suffered by him arising out of and in the course of his employment, while engaged as assistant engineer and watchman at the Shredded Wheat Company's plant located in the city of Oakland, this state, on July 28, 1931. Respondent Shredded Wheat Company, a corporation, which is an adjunct of the National Biscuit Company, is self-insured. The commission held that petitioner's claim for compensation was barred, inasmuch as no claim was filed within a period of six months following the day of alleged injury, and no medicinal treatment was furnished or compensation paid, or other act done by the employer during or after the expiration of said six months' period which could be said to be sufficient to toll the statute. No other issue was decided.

Petitioner at the time of said injury was forty-six years of age, and apparently in sound health. He had been in the employ of the company continuously for a period of nine years and admittedly was a very trustworthy employee. His stipend was $43 per week. Prior to July 28, 1931, the duty of watchman was consolidated with his duty as assistant engineer, and he was working in such dual capacity at the time he claims to have received injuries which have resulted in total permanent disability. Permanent disability, rapidly following the incident which will hereafter be related, is admitted by respondent Shredded Wheat Company, and it was solely for this reason that his employment came to an end by order of said company. Petitioner's hours on the Sunday night in question were from 12 o'clock midnight to 8 o'clock the following morning.

The building in which petitioner was working is a four-story building proper. The roof also serves as a floor. The smokestacks are visible from the roof. A steel staircase leads from the basement in which the steam engines are located to the roof. These stairways, which have iron railings, are somewhat precipitous. At about 2 o'clock A. M., petitioner made his way to the roof of the building on his rounds, punching the time-clocks which were placed on each floor. This took his attention from the boilers from fifteen to twenty-five minutes. No claim is made that petitioner was not at all times acting within the scope of his employ-

ment. While on the roof in the performance of duty, he observed that the smoke coming from the stacks appeared white, resembling steam. This indicated that the fires were out and quick action was necessary in reaching the boiler-room, as the danger was great that the engine would backfire and blow the front out and cause serious damage. Such a casualty had occurred once before. With the seriousness of the situation in his mind, petitioner describes the hurried descent he made to the basement down a dimly lighted stairway He was saved from falling headlong several times by grabbing the railing on his way to the engine-rooms. Petitioner claims that his arms and body were badly wrenched and jarred by catching the railing to break the momentum of his descent. He also claims that he experienced severe pain through his shoulders and arms, especially in the left arm, before he reached the engine-room. He testified that he related his experience to two fellow-employees on the morning of the incident, but made no formal report to the company, as he did not then regard it as serious. Petitioner, though suffering pain, continued to work until August 7th, a period of ten days from the day of injury, when he was compelled to lay off by reason of increasing pain and go under the care of a physician. On August 9th he was placed in a hospital, where he remained for a week under treatment. He testified that immediately after making the violent descent described down the stairway, his troubles started and grew progressively worse until halted somewhat by hospital treatment which he received. He suffered severe pain in his arms, shoulders and chest. His left hand and fingers also became seriously involved. Dr. Frank R. Makinson, the company's physician, who saw the petitioner twice, testified that he did not regard the case as a proper charge on industry. He diagnosed it as rheumatic endocarditis bearing no causal relation to the injuries which petitioner claimed to have suffered. When asked if a severe strain such as petitioner described could have been the proximate cause of the development of rheumatism or arthritis, his answer was that such things were debatable, and possibly within the realm of possibility, but not probability. When pressed further he said: "I say that it is within the realm of very remote possibility, but not probability. To say no, I think would be unfair. The picture is that of acute rheu-

matism. There is nothing unusual about this acute attack of rheumatism, as I see it."

Dr. H. L. Parish, the physician who had charge of the case from August 7, 1931, and made fifty-eight visits, ending August 27, 1932, in a very full report described the pain centers in the left shoulder, anterior chest wall, and right shoulder, all of which were swollen on his visit of August 9th. The knees, ankles, wrists and joints of the fingers were also badly swollen. The character of the approach, involving one joint after another, indicated to him the beginning of articular rheumatism. He felt positive that the original muscular strain furnished the evidence of an accidental etiology.

No other physician testified in the proceeding. What relation the mental and physical shocks may have had to the ills, if any, which have permanently afflicted petitioner, was not found by the commission, as compensation was denied on the ground that the proceeding was barred by the statute of limitations.

The question presented is whether as a matter of law petitioner's claim was barred, as held by the Industrial Accident Commission, by the provisions of section 11, subdivisions (b) 1 and (c) of the Workmen's Compensation, Insurance and Safety Act of this state. The issue was decided by the commission upon the interpretation it placed upon certain letters and certain acts of the parties about which there is no dispute.

Subdivision (b) 1 of section 11 of the Workmen's Compensation Act provides that proceedings for the collection of the benefit provided by the act for the collection of disability payment must be commenced within six months from the date of the injury. Subdivision (c) provides that the payment of compensation, or any part thereof, or agreement therefor, shall have the effect of extending the period within which proceedings for its collection may be commenced, six months from the date of agreement or last payment of such compensation, or any part thereof, or the expiration of the period covered by any such payment. The concluding language of said subdivision (c), however, excepts from the bar of the six months' period, persons suffering from the following physical disabilities: "provided, further, that the provisions of this section shall not apply

to an employee who is totally disabled and bedridden as a result of his injury during the continuance of such condition, or until the expiration of six months thereafter''. It is admitted that petitioner was totally and permanently disabled immediately following the alleged injury, as that was made the specific ground of discharge by the employer in February, 1932, after awaiting his recovery for several months. That he was bedridden at least for a long period and suffered severe pain following his return from the hospital on August 16, 1931, the testimony of the medical witnesses and the evidence obtained from other sources abundantly establishes. The evidence also would seem to justify without conflict a finding that petitioner was actually bedridden for a sufficient period of time immediately following July 28, 1931, the date of the alleged injury, to have tolled the running of the six months' statute, as provided by section 11, subdivision (c), of said act. This important question was not called to the attention of the commission, and consequently it was not considered by it in ruling that petitioner was barred by said statute of limitations. Unquestionably the matter is sufficiently important to require a ruling as to whether petitioner's condition, provided it be shown that he sustained a compensable injury, brought him within the bedridden exception provided in said section. As the case now stands, this important factor in the case, which bears directly upon the question whether or not the petitioner's claim is barred by the general six months' provision, has not been considered or adjudicated.

We now turn to the effect of the undisputed testimony and facts upon which the decision turned. It may be noted at the outset that the commission, as mildly suggested by its counsel, seemed to have entertained doubts as to whether the difficulty in the engine-room, which gave reason for petitioner's alarm and caused him to descend the steep stairway in the manner related by him, actually occurred. And if so, whether his rapid descent was the cause, or in any way contributed to the sudden and serious illness which immediately followed the day on which he claims the incident occurred. This, of course, goes to the merits of the proceeding and has no bearing on the ruling as to the bar of the statute. Without any purpose of prejudging the case upon its merits, we may state that we have read the record

and it cannot be said that petitioner's claim has not the color of merit.

We now direct attention to the consideration of the facts from which the commission drew its deduction to the effect that petitioner's claim was barred.

The morning of July 28th, after having finished his night's assignment, petitioner told his fellow-workmen, Bill Wharf and George Utley, the latter being in charge of the steam plant, of his hurried and stumbling descent from the fourth to the ground floor, and of the pains which he felt in his arm and chest immediately thereafter. He had never suffered similar pains before and they grew gradually more severe. Ten days later he was sent to the hospital by his physician, where he remained for a week. He was thereafter confined to his bed at intervals of various duration, and the prognosis as to returning health was not encouraging. On August 17th, the day after petitioner had returned from the hospital, Dr. Frank R. Makinson, physician in charge of the compensation cases for the Shredded Wheat Company, called upon petitioner at the request of Mr. Campbell, manager of said company. The doctor made no physical examination of petitioner. He testified that his visit was limited to the sole purpose of ascertaining the cause of the accident, and the manner of its occurrence. Petitioner had previously testified as to Dr. Makinson's visit. In his testimony petitioner stated that Dr. Makinson in concluding his investigation as to the cause of the injury said: "I think you are just a faithful employee tending to the line of your duties. The employer will take care of everything; look out for all this."

It is the claim of petitioner that he was led to believe that the company, which was self-insured, was taking a paternal interest in his welfare and that his interests would not be allowed to suffer. There is testimony in the record to the effect that petitioner was told by the manager not to ask for compensation as it would "hurt him on the job". Petitioner testified that his wife, who visited the manager in petitioner's behalf, reported to him the above advice as coming from said manager. No direct denial was made of this testimony. The time at which it was spoken is left in a state of uncertainty.

Dr. Makinson's attention being called to the testimony of petitioner to the effect that he, Dr. Makinson, assured petitioner on his visit of August 17th "that the employer would take care of everything", etc., gave the following testimony:

"I don't exactly recall the line of questioning which would be peculiar to me in my questioning as to this. I probably asked him if it were not the fact of a faithful employee carrying out his duties, yes, but at no time did I tell him that the Shredded Wheat would accept responsibility. That I want specifically understood, both from your point of view and the viewpoint of the Shredded Wheat Company. I do not accept any responsibility financially. Mine is purely a medical opinion."

It will be observed that the doctor denied emphatically that his visit was for the purpose of examining petitioner or for the purpose of gaining any information as to petitioner's physical condition, but it was made solely as an investigator of the facts of the alleged injury as related by petitioner.

The physician was next asked: "Q. Did you say any such thing as this, that you imagined from the circumstances that he [petitioner] would be taken care of? A. *I told him this would be properly disposed of,* and he assumed, I presume, that that meant the company would assume responsibility. *Properly taken care of may mean anything.* From my point of view, the proper disposition of this case, that is what I meant." (Italics supplied.) We are of the view that petitioner was justified in inferring from the foregoing language that the company would see to it that he would lose no legal rights by entrusting himself to his employer's care. There is nothing in the doctor's evidence alsewhere which tends to qualify or refute the testimony above quoted.

Petitioner's application for adjustment was filed July 25, 1932. The accident is alleged to have occurred on July 28, 1931. Consequently if the six months' period of limitation has not been tolled, the claim is barred. Petitioner performed no service after August 7, 1931. It seems, however, that two fellow-employees put in extra time and performed petitioner's duties for a period of two weeks immediately following August 7th, and that the compensation for said

two weeks was paid by the company to petitioner, although he did no work. On December 22, 1931, approximately five months after said injury, said company sent to petitioner the following letter, inclosing a check in the sum of $86, the amount being one-half of his regular salary:

"December 22, 1931.

"Mr. James Bulger,
     "2215 62d Avenue,
          "Oakland, California.

"Dear Jim:

"I am happy to enclose our check No. 8982 in the amount of $86.00 in payment of one-half of your regular salary for the month of December.

"This was made possible through the kindness of Dr. E. T. Oakes, manager at Niagara Falls, from whom we just received a wire of authorization.

"All the gang join me in wishing you and your family a Merry Christmas and a Happy New Year.

"Cordially,
          "SHREDDED WHEAT BAKERY
          "NATIONAL BISCUIT COMPANY
                    "Manager.

"BLC:B"

In January, 1932, petitioner was sent two checks in the sum of $21.50 each. That sum equaled half pay for two weeks, and on February 6, 1932, he was given a check representing the sum of $86, which was half pay for the preceding four weeks. A short time after said last payment was made the company's physician made a physical examination of petitioner and pronounced him permanently disabled and unfit for future service, of which he was notified. He received no further assistance from said company thereafter. This was in February, 1932, a short time after the last payment of one month's half pay was made by the company, to wit, February 6, 1932, and also a short time after the six months' period of limitation, reckoning from July 28, 1931, had expired.

From a communication of Dr. H. L. Parish, dated September 9, 1932, addressed to the commission as explanatory of his bill for medical services rendered petitioner over a

long period of his illness, and which is of record in the proceedings, we take the following excerpt:

"This [bill for medical attention] included reports and long and frequent telephone communications with the authorities of the Shredded Wheat Biscuit Company, who, up to the time of merging into the National Biscuit Company, manifested the greatest interest in this employee, urging me to expedite his recovery and return to duty."

Pyramiding the foregoing facts and other evidence which at least inferentially tended to create a belief in the mind of petitioner that he would be cared for by his employer, can it be said as a matter of law that either or both combined are sufficient to toll the statute on the ground that the employee was thereby lulled into believing that the employer had assumed responsibility for any compensable injury he may have suffered? We are of the view that they are.

The Industrial Accident Commission has, from its very early decisions until the present case, held "that whenever compensation is due as a matter of fact . . . then payments for the benefit of the injured employee shall be treated as disability indemnity, whatever the motive may have been in paying them, and whether or not there was any acknowledgment of liability to pay compensation or of payment as compensation". (*Howell v. Lanfair,* 5 Industrial Acc. Com. 176.) In the instant case the commissioner did not consider the question as to whether or not the illness which afflicted petitioner was the result of compensable injury. If, as a matter of fact, it should prove to be such, the statute of limitations would not, under the decisions of the commission and the decisions of the reviewing courts of this state, bar petitioner's claim, as the application for the adjustment of his claim was filed within six months after said last payment.

We think the rule as stated in *London Guar. & Acc. Co.* v. *Industrial Acc. Com.,* 92 Cal. App. 298 [268 Pac. 670, 672], which finds support in numerous decisions of the Industrial Accident Commission, is sound and should govern this case. We therefore adopt the following portion of said decision as applicable to and decisive of the instant proceedings:

"Under the provisions of section 11 (c) of the Workmen's Compensation Act the payment of compensation shall have the effect of extending the period within which proceedings for its collection may be commenced, six months from the date of the last payment; and, as stated, the evidence here shows without dispute that while Read was totally disabled in the hospital his wages were being constantly paid by his employer. We are of the opinion that the payment of such wages, under the circumstances above related, constituted the payment of compensation for the injury; and that, therefore, since Read's application was filed within six months after the last payment of such compensation, his claim was not barred by the statute of limitations.

"There appears to be no case adjudicated by the courts upon this particular point, but it has long been the rule of the commission that where, as here, an employee is totally disabled and his employer continues to pay him full wages during the period of his disability, such payments do not constitute wages or gratuities, but are payments of compensation which operate to toll the statute during their continuance (27 Cal. Jur., p. 458; *Oders* v. *Great Western Electro Chemical Co.*, 6 Industrial Acc. Com. 95); and we find nothing unreasonable in the construction thus placed upon the terms of the act."

There is no merit in the point made by respondents that the case above cited is not authority for a like ruling upon the facts of the instant case on the ground that petitioner in said cited case was paid full compensation, while in the instant case the employee was paid on a half-wage basis. In each case the employee performed no services. One received full compensation, and the other half compensation. We are unable to see any reason why one should receive the benefits of the provisions of the act and the other should be excluded therefrom. It would seem that the one receiving half compensation would have greater reason for believing that he had been put upon a compensation basis than the one receiving full compensation. The former's compensation would more nearly agree with industrial compensation in amount than would the other's. In both cases there was nothing said by the employer to indicate that said employer repudiated responsibility. In fact, in the instant case, it carried the employee along on half pay during all of the

latter six months' period to and past the limit fixed by the act as a bar.

We are of the view that petitioner's claim for compensation is not barred by the statute of limitations, for the reasons set forth herein. We express no opinion as to the merits of the claim, as that is a matter which must be determined solely by the commission.

The order of the commission denying compensation on the ground of the bar of the statute is annulled, and the cause is remanded to the commission with directions to hear and determine the matter upon its merits.

It is so ordered.

Shenk, J., Preston, J., Waste, C. J., and Thompson, J., concurred.