[Civ. No. 45847. Second Dist., Div. Five. June 26, 1975.]

BUENA VENTURA GARDENS et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD
and ROSE L. NOVAK, Respondents.

## COUNSEL

Allen, Rhodes & Sobelsohn and Irvin L. Lucks for Petitioners.

Gerhard W. Orthuber and Philip G. Jackson for Respondents.

## OPINION

**LORING, J.**\*—On November 7, 1973, Rose L. Novak (Novak) filed an application with the Workers' Compensation Appeals Board (Board)[1]

*\*Assigned by the Chairman of the Judicial Council.*

[1]Formerly Workmen's Compensation Appeals Board. Title changed California Constitution, article XX, section 21, adopted 1974 General Election.

alleging injury arising out of and occurring in the course of her employment as a housekeeper for the period July 1, 1969, through March 30, 1972. Said injury was to her chest, legs, arteriosclerosis and hernia.

Novak's employer Buena Ventura Gardens (BVG) and Aetna Casualty and Surety Company (Aetna), its carriers, raised the affirmative defense of the statute of limitations pursuant to Labor Code sections 5405 and 5412.

The matter came to hearing on July 23 and August 30, 1974. A finding and award in favor of Novak was issued on November 28, 1974. BVG and Aetna filed a timely petition for reconsideration with the Board. On January 27, 1975, the Board issued an order denying reconsideration.

BVG and Aetna now petition this court for a writ of review and, following an inquiry and determination to annul, vacate and set aside Board's opinion and order denying reconsideration.

## CONTENTION

Petitioners contend that the Board exceeded its powers and acted improperly and unreasonably in issuing a finding and award not supported by substantial evidence and existing law when it found that Novak was not barred by the statute of limitations and that her injury arose out of and occurred in the course of her employment.

## FACTS

All parties are in general agreement regarding the following facts. Novak worked at the Buena Ventura Gardens under the supervision of Whitney A. Elliot (Elliot) from July 1, 1969, to March 30, 1972, performing the duties of housekeeper. This involved cleaning a 285-unit apartment complex. Her work was considered strenuous but she was considered competent.

There is some disagreement as to just when Novak began complaining of pain in her chest and legs and shortness of breath. She began seeing a Dr. Ludington of the Buena Ventura Medical Clinic in August of 1972. At that time Novak showed symptoms of hypertension, coronary

ischemia and occult congestive heart failure. There is no indication that Dr. Ludington informed Novak of these diagnoses at that time.

The parties agree that by March of 1972 Novak had made Elliot aware of the pain in her chest and legs and of her continuing shortness of breath. At this time Elliot found it necessary to hire an assistant to aid Novak with her assigned tasks.

On March 30, 1972, while at work Novak experienced severe pain in her chest and legs. She notified Elliot of this. Elliot instructed Novak's husband and a fellow employee of Elliot, to take Novak to see a doctor immediately.[2]

During late March or early April[3] Novak was specifically informed of the nature and severity of her condition and that said condition was caused by the "strain of the working and overwork."[4]

Elliot denies any further direct knowledge of Novak's condition. He testified that he never spoke with any of Novak's physicians or saw any medical reports. Elliot was informed by Novak's husband on March 30, 1972, that Novak would not be back to work for a while. Two weeks later Novak was terminated.

Elliot is uncertain as to whether he and Novak ever discussed a worker's compensation claim for this ailment. However, it appears that Elliot at some point received some of Novak's medical bills. It was Elliot who referred said bills and Novak to the California State Employment Development Department.

## DISCUSSION

*Reynolds* v. *Workmen's Comp. Appeals Bd.* 12 Cal.3d 726 [117 Cal.Rptr. 79, 527 P.2d 631], controls the disposition of this appeal. The factual situations are amazingly analogous.

---

[2]Novak claims Elliot specifically sent her to the Buena Ventura Medical Clinic. Elliot testified that he made no mention of which doctor Novak should consult.

[3]There is a certain amount of conflict concerning the dates of Novak's referral and first visit to a cardiologist. Novak claims the referral was on March 30, 1972 and first visit during the first week in April. A letter from Dr. Ludington to Dr. Buckley, the cardiologist who examined Novak and gave her the diagnosis, is dated March 21, 1972. Buckley's records indicate Novak saw him throughout March.

[4]Administrative record, page 90, line 3.

In *Reynolds,* the claimant experienced pain in his left arm and chest during the course of a normal work day. He complained to his supervisor of said discomfort. He experienced a heart trauma in the presence of his supervisor, who ordered an ambulance to take Reynolds to the hospital.

The only event not present in the instant case was that in *Reynolds* the supervisor actually accompanied Reynolds to the hospital and was present when the doctor informed Reynolds of the nature and cause of his condition.

*Reynolds* held that the claimant was not barred from filing a workmen's compensation claim, even though more than a year had passed prior to the filing of his claim, because the employer had failed to comply with Labor Code section 138.4 and title 8, chapter 4.5, sections 9816,[5] 9817[6] and 9859[7] of the California Administrative Code which require that an employer notify his employee of his rights to compensation benefits.

[5]Section 9816 reads:

"9816. When Notices Are Required. In every case of which the employer has notice or knowledge of an injury which: (a) requires hospitalization, or results in disability of more than three days; or (b) results in death, he shall give to the employee, or his dependent(s) in case of death, notice of payment or nonpayment of benefits, and of termination of benefits together with a statement of account of benefits paid, with a copy to the Administrative Director, Division of Industrial Accidents, at the address contained in Section 9868." (A 1974 amendment reduced the number of days from seven to three.)

[6]Section 9817 reads:

"9817. Notices Required and Time for Service. The following notices shall be given and served at the time and in the manner provided:

"(a) Notice of commencement of payments shall accompany the first payment of the benefit being provided.

"(b) Notice of termination of benefits shall be given within 14 days after knowledge of facts warranting such termination.

"(c) Notice of nonpayment of benefits shall be made as soon as possible, but in any event not later than 14 days after the employer's knowledge of the claim of injury, with a second notice within 28 days of such knowledge, and every 7 days thereafter until benefits are commenced or liability is denied.

"(d) Notice of rejection of liability shall be sent upon making the decision to deny liability.

"(e) Statement of account of benefits paid shall be given:

"(1) For temporary disability indemnity paid on termination of temporary disability benefits;

"(2) For permanent disability indemnity paid on last payment pursuant to an award or rating.

"(A) In the absence of an award, such statement shall be based on an informal rating prepared by the Rating Bureau pursuant to Section 9742. 'Self-ratings' prepared by the employer are not acceptable."

[7]Section 9859 reads:

"9859. Rejection of Claim or Denial of Benefit. Notice of rejection of a claim or denial of a benefit shall be made to the employee, or dependent(s) in case of death, by a letter,

In *Reynolds,* the Supreme Court recognized an affirmative duty on the employer to notify a claimant pursuant to the above code sections.

"PG&E, however, was required, under administrative rules issued by the Administrative Director, Division of Industrial Accidents, Department of Industrial Relations, to notify petitioner that there was a possibility he would be entitled to workmen's compensation benefits and, since it apparently denied that he was entitled to benefits, to send him an unequivocal statement to that effect." *Reynolds, supra,* at page 728.

■ The issue here therefore is whether Elliot could be considered to have had enough knowledge of Novak's condition to come within the affirmative duty recognized in *Reynolds.*

Elliot was aware of Novak's weakening condition during March of 1972. He actually saw her on March 30, 1972, while she was in great discomfort. He ordered her to be taken to a doctor immediately. He was informed by Novak's husband upon her return from the doctor that Novak would not be back to work for a while. On April 15, 1972, he terminated Novak due to her condition.

with a copy to the Administrative Director, at the address contained in Section 9868.

"The letter shall contain at least the following:

"1. Identifying data:

"(a) Employee's name, address, and Social Security number.

"(b) Name and address of dependent(s) in death claims.

"(c) Name and address of employer.

"(d) Claimed date of injury or death.

"(e) Name, identification number, case or file number of the insurance carrier or self-insured or permissibly uninsured employer.

"2. An unequivocal statement that the claim or benefit is being denied. .

"3. A statement of the reason or reasons for denial. If the reasons stated are not clear or are unlikely to be readily understood by the employee, or his dependent(s), the Administrative Director may require a further explanation to the employee, or his dependent(s), with a copy to the Administrative Director.

"4. The following paragraphs are mandatory:

'Should you believe that you are entitled to benefits under the Workmen's Compensation Law: 1) you may contact the Administrative Director of the Division of Industrial Accidents, State of California, P. O. Box 429, San Francisco, California 94101, for information or assistance; 2) you may file an application for a hearing before a referee of the Workmen's Compensation Appeals Board; 3) you may consult an attorney or representative of your choice.

'If you have any questions, act immediately. If you wait too long, you may lose your rights to benefits.'

"5. A statement that a copy of the notice is being sent to the Division of Industrial Accidents as required by the Labor Code of the State of California."

It would appear Elliot should have been aware of the presence of a condition that would be aggrevated by Novak's continuing to work. This should have put him on notice that such a condition might have been work related.

A great deal of time has been spent in petitioner's brief herein concerning the fact that Elliot lacked contact with Novak's doctors and the fact that he did not receive any medical reports. He knew that she became disabled while on the job on March 30, 1972. He also knew on April 15, 1972, that she would not be able to return to work. He also knew enough about Novak's medical condition to recommend her filing for State Disability Insurance. He went so far as to secure the forms for her. In our view under the facts the following principle recognized by *Reynolds* is applicable:

*Reynolds (supra)* specifically states at page 729: "The clear purpose of these rules is to protect and preserve the rights of an injured employee. . . . Since the employer is generally in a better position to be aware of the employee's rights, it is proper that he should be charged with the responsibility of notifying the employee . . . that there is a possibility he may have a claim. . . ."

If the spirit of *Reynolds* is to be maintained, one cannot allow an employer to evade his duty simply because he has received no formal medical evidence from the employee as to the precise medical cause of the employee's ailment.

While admittedly BVG did not have precise technical medical knowledge of Novak's condition, BVG did have knowledge that Novak sustained the disability during the period of actual employment, that it was probably permanently disabling and that it might conceivably be work caused or related. BVG had a duty to either give written notice of denial of benefits under Administrative Code section 9859 or written notice that a possible claim might exist under Administrative Code section 9816 in order to commence the running of the statute of limitations. BVG did neither. It may not now argue that the statute of limitations ran while Novak was ignorant of her rights of which it had a duty to advise her. It may not take advantage of its own neglect of duty.

Notice commencing the statute of limitations is not related to notice that the injury may be work related but rather that there may be benefits

available. After notice of potential benefits the statute of limitations commences as to the timely filing of the claim.

The writ of review is discharged and the petition is denied.

Stephens, Acting P. J., and Ashby, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied August 20, 1975.