[L. A. No. 29570.   In Bank.   Nov. 14, 1968.]

CLEO CHAMBERS, Petitioner, v. WORKMEN'S COM-
PENSATION APPEALS BOARD, LONG BEACH
IRON COMPANY et al., Respondents.

Richard J. Cantrell and Levy, DeRoy, Geffner & Van Bourg for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Nathan Mudge, Samuelsen, Bolson & Whitehead, N. R. Samuelsen and Ben Whitehead for Respondents.

MOSK, J.—Subdivision (a) of section 5405 of the Labor Code provides that an applicant for workmen's compensation benefits must commence proceedings within one year from the date of injury. Under section 5412, the date of injury in the case of an occupational disease is deemed to be the day upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that the disability was caused by his employment.

The primary question involved in this case is whether there was substantial evidence to justify the Workmen's Compensation Appeals Board (hereinafter board) in concluding that the claim of Cleo Chambers was barred by section 5412 on the ground that he failed to exercise reasonable diligence to ascertain that his disability, which was caused by emphysema, originated with his employment. We hold that the board's determination was not supported by substantial evidence.

Chambers, a machinist with a third grade education, was employed by an iron company from 1952 until early 1964. His work required him to use a machine known as a boring mill, with which he cut cast iron rings and covers. He worked in a

room 100 feet by 50 feet and about 30 feet high. There was no fan, air conditioning, or any available ventilation except through windows and doors, which were open only when the weather permitted. The room in which he worked was constantly filled with a heavy dust as a result of the cutting process and no mask or other breathing apparatus was provided for the workmen. About the middle of 1963 Chambers noticed that he was tiring easily. He was short of breath and, as he stated, "just played out" and "run down." His condition deteriorated so that he was unable to work after January 1964.

After he ceased working he consulted a Dr. Wasserman who, after performing some tests, advised Chambers that he had emphysema and a chest hernia and that he could no longer work. The doctor did not inform him of the causes of emphysema but did state that it affected the lungs. It was suggested that he stop smoking and that he have an operation for his hernia. Chambers' wife was with him when the test results were related. On that occasion she asked the doctor whether her husband's work could have caused his condition, and the doctor replied, "I doubt it. I don't think so."

In December 1966 Chambers read an article in a newspaper reporting that emphysema could be caused by the inhalation of dust and it then occurred to him for the first time that he might have a "claim coming." Prior to reading the article he neither knew nor was told what produced emphysema and did not suspect that it could have been caused by the conditions of his employment.

Shortly thereafter he consulted an attorney, who filed a claim on his behalf in January 1967, less than a month after the article appeared. Chambers then consulted a Dr. Dickstein, who attributed the emphysema to his constant exposure to dust over a period of many years.

The referee found that Chambers' disease arose out of and in the course of his employment, to the extent of 75 percent disability—we discuss the remaining 25 percent disability subsequently—and that the claim was not barred by the provisions of section 5412. The opinion of the referee stated that Chambers did not know of the connection between his desease and his work until so informed by Dr. Dickstein. On reconsideration the board affirmed the referee's finding of industrial causation but held that Chambers' claim was barred by section 5412 because in the exercise of reasonable diligence he should have known that the disability was caused by his

employment. In support of its determination the board concluded that Chambers was aware in 1963 that his work was tiring him and that he was unable to work a full day because of his physical condition, that he "attributed his poor physical condition to his work," and that when he was advised by Dr. Wasserman that he had lung trouble, "he did not make inquiry as to whether his condition was work connected."[1]

The fundamental rule that an employee is not barred by the statute of limitations applicable to workmen's compensation claims unless he knew, or in the exercise of reasonable diligence should have known, that his disability was caused by his employment, had its origin in the leading case of *Marsh* v. *Industrial Acc. Com.* (1933) 217 Cal. 338 [18 P.2d 933, 86 A.L.R. 563], which was decided 14 years before the enactment of section 5412. (See discussion in *Fruehauf Corp.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 569 [68 Cal.Rptr. 164, 440 P.2d 236].)

The application of this principle was best summarized in *Pacific Indem. Co.* v. *Industrial Acc. Com.* (1950) 34 Cal. 2d 726, 729 [214 P.2d 530], in which it was held that whether an employee should have known in the exercise of reasonable diligence that his disability was the result of his employment was a question of fact, that the employer has the burden of proof on that issue, and that its burden is not sustained merely by a showing that the employee knew he had some symptoms. Moreover, it is not fatal to the employee's claim if he has mistakenly diagnosed his own illness since he is not required to be versed in medical knowledge. These rules have been applied in numerous cases. (See, e.g., *Alford* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 198, 204 [169 P.2d 641]; *Associated Indem. Corp.* v. *Industrial Acc. Com.* (1945) 71 Cal.App.2d 820, 823-824 [163 P.2d 771]; *Argonaut Mining Co.* v. *Industrial Acc. Com.* (1937) 21 Cal.App.2d 492, 499 [70 P.2d 216]; *Price* v. *Industrial Acc. Com.* (1935) 9 Cal. App.2d 213, 216 [49 P.2d 294].)

When the board's conclusions are analyzed in the light of the foregoing principles, its determination that Chambers' claim is barred clearly appears erroneous.

---

[1]The board also said that Chambers "was not aware that he could file a claim for pulmonary emphysema until he read a newspaper article." This statement is true, but it appears to be an incomplete description of Chambers' contentions since he also maintained that prior to reading the newspaper article he did not know the cause of emphysema or that it could have been connected with his employment.

The first circumstance relied upon by the board is that Chambers knew his employment was tiring him and that he was unable to work a full day. The essential link lacking in this evidentiary chain, however, is his knowledge that these physical difficulties were traceable to a disease that was caused by the conditions under which he worked. (Cf. *Price* v. *Industrial Acc. Com.* (1935) *supra*, 9 Cal.App.2d 213, 216, and *Union Lumber Co.* v. *Industrial Acc. Com.* (1951) 16 Cal. Comp. Cases 255.)

The opinion of the board also states that Chambers "attributed his poor physical condition to his work." Although this statement is accurate, it cannot provide adequate support for the board's conclusion of lack of diligence. The board and the employer's insurer rely upon certain questions and answers set forth in a deposition. Chambers was asked, "Is it your testimony, then, that the first time that you suspected that this was due to your work was when you read this article . . . ?"[2] He replied, "Well, I knowed my work is what caused my condition." The attorney then asked, "When did you first know, or thought you knew, that the work caused your condition?" Chambers said, ". . . when I was feeling the worst, on the job. I figured it was my work that was doing it." On redirect examination Chambers stated that what he meant by these statements was that his work caused him to feel tired and run-down. Since Chambers was referring to his own evaluation of his physical state before he consulted a doctor and was informed of the diagnosis, the only meaning that reasonably can be attributed to his testimony in the deposition is that which he accorded to it on redirect examination, i.e., that at the time he was still working and before he consulted a doctor he "figured" that his work was causing him to be tired.[3]

Subsequently Dr. Wasserman told him that he was suffering from emphysema and a chest hernia. Chambers could only infer from this information that his tiredness was caused by either the emphysema or the chest hernia, or both, rather than by his work as he had previously assumed. There is no evidence in the record that he had any indication before Decem-

[2]The question is unclear since it cannot be ascertained whether the word "this" refers to Chambers' tiredness or to his emphysema.

[3]In correcting the deposition to express his meaning Chambers in handwriting had, before the hearing, crossed out the words "my condition" at the end of the first answer and inserted, "me to tire out." After the second answer he added, "I did not know what my condition was."

ber 1966 that emphysema could have been caused by the conditions under which he worked and therefore no rational basis existed upon which he should have concluded that his disability was connected with his employment.

It is also a matter of significance that when Chambers and his wife visited the doctor on the occasion he was informed of the emphysema, she asked the doctor whether the disease could have been caused by the conditions under which Chambers worked and the doctor replied, "I doubt it. I don't think so."

In *Pacific Indem. Co.* v. *Industrial Acc. Com.* (1950) *supra*, 34 Cal.2d 724, 729-730, the claimant was suffering from tuberculosis which was reactivated by his employment. The commission had determined that he neither knew nor in the exercise of reasonable diligence should have known that his disease was caused by his employment, and the court upheld this conclusion. The claimant had not been advised when his condition was first diagnosed that the disease was caused by his work. "He inquired of his employer, through his wife, as to whether the original attack was compensable and was advised it was not. Although the fact that he inquired may have indicated that he thought he might be entitled to compensation, such thought was banished by his employer." Here, too, inquiry was made as to industrial causation and, as heretofore indicated, Dr. Wasserman stated he did not think Chambers' work was the cause of his emphysema.

Under all the circumstances the employer did not meet its burden of establishing that Chambers failed to exercise reasonable diligence in ascertaining that his illness was caused by his employment. Thus Chambers' claim is not barred by section 5412.

The referee found that only 75 percent of Chambers' disability was due to his employment and that 25 percent must be attributed to the fact that Chambers had smoked approximately one package of cigarettes a day for 42 years prior to the date of his disability.[4] There is not a scintilla of probative evidence to support this apportionment.[5]

Dr. Wasserman, who first diagnosed Chambers' condition,

[4]It is a striking coincidence that the claimant in *McAllister* v. *Workmen's Comp. App. Bd.* (1968) *ante*, pp. 408, 418 [71 Cal.Rptr. 697, 445 P.2d 313], also smoked a pack of cigarettes daily for 42 years.

[5]Chambers petitioned for reconsideration on this ground but the board did not determine the apportionment issue since it concluded that the entire claim was barred by the statute of limitations.

advised him to stop smoking and he did so. Dr. Dickstein did not refer to cigarettes as a cause of emphysema or of Chambers' disability although his report shows that he was aware of the fact that Chambers had smoked for a number of years. The referee admitted that there was no specific medical evidence to support the apportionment but concluded that it was "common knowledge that long continued use of cigarettes can be a contributing factor in lung disabilities" and that the fact Dr. Wasserman had advised Chambers to stop smoking was indicative "that this was to some degree contributing to applicant's condition."

The referee thus appeared to conclude that Chambers' disability was caused both by the dust-laden atmosphere in which he had worked and by his smoking. ■ The cause of emphysema is not a matter for judicial notice and can be established only by medical evidence. (See 2 Hanna, Law of Employee Injuries and Workmen's Compensation (2d ed. 1967) § 11.03[5][d]. ■ Here the only medical testimony upon which the commission and the referee relied did not mention cigarettes as a causative factor. There is no evidence in the record that smoking contributed to Chambers' disability to any extent. The fact that Dr. Wasserman advised Chambers to stop smoking in the future does not indicate that he would have suffered any lesser degree of permanent disability from the emphysema if he had not smoked in the past.

The order of the board is annulled.

Traynor, C. J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would affirm the order of the board.