[No. B051525. Second Dist., Div. One. Oct. 21, 1991.]

ERNEST CHAVIRA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, JOHNS-MANVILLE
SALES CORPORATION et al., Respondents.

464

**COUNSEL**

Rose, Klein & Marias, Howard N. Lehman and Arlyn M. Egers for Petitioner.

Phillip N. Bruce as Amicus Curiae on behalf of Petitioner.

Warren E. Kamm for Respondents.

**OPINION**

**ORTEGA, J.**—Respondent Workers' Compensation Appeals Board (Board) determined the application for workers' compensation benefits in this

asbestos case is barred by the statute of limitations. We conclude substantial evidence does not support the Board's finding that more than one year before the application was filed applicant knew or in the exercise of reasonable diligence should have known he had disability that was caused by his employment. We therefore annul the Board's decision after reconsideration and remand for further proceedings.

## FACTS

Ernest Chavira, applicant, was employed by Johns-Manville Sales Corporation (Manville) from October 24, 1952, through May 23, 1958. During his employment by Manville, applicant had extensive exposure to asbestos. Although applicant subsequently obtained other employment, including employment as a mechanic by Pan Pacific Fisheries from 1978 to 1987, there is no contention of any industrial exposure to asbestos after the Manville employment.

In January 1981 applicant had an upper respiratory infection during which he coughed up blood. Several weeks later, he was hospitalized because of transient ischemic attacks and a possible stroke. A chest X-ray taken at the hospital was abnormal, and a pulmonary consultation was arranged.

Dr. David Campisi reported the chest X-ray revealed probable pleural scars and a general increased pleural density in the right lung. There also appeared to be a pleural plaque in the left lateral chest wall. In his February 10, 1981, report, Dr. Campisi stated: "[Applicant] does not appear to be remarkably limited by his respiratory symptoms, although he does state that he becomes short of breath with moderate exertion. *He is able to perform his work and normal activities without limitations.*" (Italics added.) Dr. Campisi noted applicant had a long history of heavy cigarette smoking. Dr. Campisi told applicant he had asbestosis.

In June 1981 Dr. Campisi reported: "Since [applicant] was seen last he has had a carotid endartorectomy and has no further symptoms of transient ischemic attacks. He also has no further respiratory difficulties, cough, hemoptysis, or sputum production. . . . [¶] His lungs reveal decreased breath sounds in the right base. . . ."

In July 1981 Dr. Campisi performed a bronchoscopy to rule out cancer. His postoperative diagnosis was "[h]emoptysis, probably due to chronic bronchitis."

In April 1982 pulmonary function studies were performed at Dr. Campisi's request because of shortness of breath. Dr. Campisi concluded: "There is a

mild restrictive ventilatory defect without evidence of air flow obstruction. . . ."

In a letter to applicant dated May 11, 1982, Dr. Campisi stated that applicant's chest X-ray obtained in June 1981 showed extensive scarring of the pleura and applicant's recent pulmonary function studies showed a "mild restrictive defect." He explained applicant's lungs were smaller than they should be. Dr. Campisi concluded: "I believe that your exposure to asbestos which occurred during mid 1950's is the most likely cause for the scarring on chest x-ray and the abnormalities on your pulmonary function studies."

On June 30, 1982, applicant filed a complaint against Manville and others in Los Angeles County Superior Court, alleging negligence, breach of express and implied warranties, strict liability, and fraudulent concealment. He alleged that, as a proximate result of exposure to asbestos, he sustained personal injury and disability that would in the future result in a reduced earning capacity and inability to pursue his usual occupation.[1] He also alleged the exposure to asbestos caused "permanent and severe injury to his lungs . . . ."

On January 9, 1985, applicant filed his application for workers' compensation benefits, alleging he sustained industrial injury to his lungs while employed in various jobs beginning in 1941.

The highest level of education applicant has completed is the seventh grade. Because of a back injury, applicant stopped working in May 1987. His age was then 64. Applicant testified he had a gradual onset of shortness of breath for three or four years before Dr. Campisi evaluated his lungs. However, applicant never missed any time from work because of shortness of breath or lung problems.

Dr. Herman Schoen examined applicant on February 7, 1986, and obtained new chest X-rays and pulmonary function studies. In a report dated May 17, 1986, Dr. Schoen stated the X-rays revealed extensive pulmonary fibrosis, irregular opacities in both lung fields, bilateral pleural plaques, extensive

---

[1]Applicant alleged: "[A]s a further sole, direct and proximate result of the exposure hereinabove described and the injuries and disabilities sustained by plaintiff, he will be unable to follow his usual occupation for a period of time. Presently, and for some time past, plaintiff has had an earning capacity in excess of $300.00 per week. Plaintiff is informed and believes, and upon such information and belief alleges, that he will be unable to follow his usual occupation in the future. When plaintiff ascertains the total period of time in which he will be unable to follow his usual occupation by reason of the exposure and injuries sustained herein, he will ask leave of this court for permission to amend this Complaint by setting forth such total period and loss."

scarring in the lung fields, and "a fuzzy appearance of the diaphragms." He concluded: "This chest x-ray is virtually diagnostic of pulmonary asbestosis." He found the pulmonary function studies indicated applicant had mild to moderate restrictive lung disease as a result of industrial asbestos exposure. Dr. Schoen concluded applicant was disabled as a result of the restrictive lung disease. Specifically, Dr. Schoen opined applicant should be restricted from heavy work and should avoid dusts, fumes, respiratory irritants, and known pneumotoxins, particularly asbestos. Before Dr. Schoen's report, no physician had concluded applicant was disabled as a result of his lung condition.

On August 29, 1986, Dr. Kenneth Wayne reported applicant had pleuropulmonary asbestosis and chronic bronchitis. Dr. Wayne concluded applicant was permanently disabled and agreed with the work restrictions Dr. Schoen had imposed. Dr. Wayne concluded, however, that the disability was entirely nonindustrial. He opined the asbestosis involved "only a borderline restrictive ventilatory defect."

On June 16, 1987, Dr. Harvey Shanies concluded applicant had asbestos-induced lung disease and a "[s]ignificant tobacco smoking history with probably masked chronic obstructive pulmonary disease." Dr. Shanies reported applicant was 30 percent permanently disabled. Dr. Shanies attributed 40 percent of the disability to asbestos exposure, 40 percent to tobacco smoking, and 20 percent to lumbar disc disease.

Dr. Shanies stated: "*It is difficult to ascertain exactly when this disability arose and his dyspnea on exertion was of insidious onset* and has stabilized. . . . The patient's several pulmonary function tests are not entirely compatible with each other . . . , however, clearly *the patient has only mild restriction and his diffusing capacity is at most mildly reduced* (some of this as noted is probably falsely reduced in relation to the increased carbon monoxide saturation anticipated from his smoking and demonstrated at least once). I must therefore conclude that the patient probably has some mild restriction and some mild obstruction. . . . *Certainly the date of onset of his dyspnea retrospectively assessed to be approximately 1977 or 1978 was very mild and not disabling and in fact the patient currently is able to perform all duties of his profession.* . . ." (Italics added.)

In a report dated October 13, 1987, Dr. Shanies discussed additional records he had recently reviewed. He concluded the pulmonary function data obtained by Dr. Campisi in 1982 demonstrated "mild restrictive disease." He stated: "*The total lung capacity* [in the 1982 pulmonary function tests] *was just beneath the normal range at 79% of predicted which is evidence of very mild restriction.* . . . The diffusing capacity was mildly to moderately

reduced and when corrected for alveolar volume was borderline reduced. . . . I would agree entirely with the conclusions of Dr. Campisi that the findings are entirely consistent with a history of asbestos exposure and asbestos induced pulmonary disease. *I see nothing which would suggest that the patient was in any way disabled by this process, however.*" (Italics added.)

Dr. Shanies concluded that the 1986 pulmonary function studies were within normal limits. Dr. Shanies suggested the apparent increase in applicant's lung capacity between 1982 and 1986 may have occurred because in 1982 applicant was still recovering from an acute infection of the lungs. He stated: "I can give no other explanation for the clearing of the restriction other than to state that technical error in measurement of the pulmonary function tests in either or both of the studies could also account for the disappearance of the restriction. It seems evident to me however that asbestos induced lung disease cannot be invoked as an explanation for the two studies. His level of exercise tolerance appears to have been stable between the time that Dr. Campisi spoke with him and the time that I saw him in June of this year . . . . He is able to perform his current job without exercise interfering. . . . The patient's mild dyspnea on exertion is probably contributed to equally by his history of cigarette smoking and his history of asbestos exposure . . . ." Dr. Shanies recommended that applicant be permanently precluded from very heavy work.

In a letter dated February 19, 1988, Dr. Shanies stated: "My opinion is that most likely Mr. Chavira has no asbestos-induced lung disease, but if the 1986 pulmonary function test was in error, and the patient does have asbestos-induced restriction, it was present when Dr. Campisi evaluated the patient in 1982."

The workers' compensation judge (WCJ) found that applicant sustained industrial injury to his lungs during his employment by Manville and the injury resulted in permanent disability consisting of a preclusion from heavy work. The WCJ determined the date of injury for statute of limitations purposes was in February 1986, when Dr. Schoen examined applicant. The WCJ explained: "Although applicant was notified in 1982 by [Dr.] Campisi that he had asbestosis, based upon x-ray findings, there is no [evidence] of any disability until seen by Dr. Schoen. Pursuant to Labor Code [section] 5412 the date of injury herein is February 1986 when Dr. Schoen informed applicant that he had a disability consisting of a work restriction."

Manville petitioned for reconsideration, contending, among other things, that the application was barred by the statute of limitations. Manville argued that applicant's complaints of shortness of breath before his hospitalization

and Dr. Campisi's subsequent findings indicated applicant had disability more than one year before he filed the application. Manville asserted applicant knew he was disabled when he received Dr. Campisi's May 11, 1982, letter.

The WCJ recommended that reconsideration be denied. The WCJ stated: "[Manville's] contention is based upon a report written by employee's personal physician, David J. Campisi, M.D., dated May 11, 1982 . . . stating that the employee's chest x-rays show extensive scarring of the pleura which is typical of that caused by asbestos exposure. . . . [¶] Dr. Campisi's report only informed employee that he was suffering from pathology. There is no mention of disability. Indeed, . . . a report from Harvey S. Shanies, Ph.D., M.D., dated February 19, 1988 conclud[es] that it is most likely the employee has no asbestos induced lung disease. In effect, defendant on the one hand is contending that employee had a disability, which started the running of the statute of limitations, and on the other hand, contends as evidenced by Dr. Shanies' last report, that employee has no disability. [¶] Applicant's testimony at the hearing and in his deposition . . . fails to establish any evidence of pulmonary disability prior to February 7, 1986 when Dr. Schoen examined the applicant and advised that he should be prophylactically restricted due to asbestosis."

The Board granted reconsideration. A split Board panel determined the application was barred by the statute of limitations. In its decision after reconsideration, the Board majority noted that Labor Code section 5412[2] defines the date of injury for statute of limitations purposes in occupational disease cases as the date on which the employee first suffered disability from the occupational disease and knew or should have known the disability was caused by the employment. The majority concluded the term "disability" in section 5412 means temporary or permanent disability.

The majority found applicant had ratable permanent disability more than one year before he filed the application. Based on the evidence that applicant had shortness of breath with moderate exertion in 1981 and that pulmonary function studies conducted in April 1982 indicated applicant had a mild restrictive ventilatory defect, the majority found "applicant had some degree of permanent disability by 1982 . . . ." In a footnote, the majority stated: "The [S]chedule [for Rating Permanent Disabilities] provides that a 'slight' chronic affection of the pulmonary tissue rates a 10% standard . . . . [Citation.] We infer that a 'mild restrictive ventilatory defect' on objective pulmonary testing means that applicant had at least a 'slight' chronic affection of his lungs. This inference finds support in the unrebutted and

[2]Unless otherwise indicated, all further statutory references are to the Labor Code.

unimpeached statement in Dr. Shanies' February 19, 1988 report that whatever disability applicant had at that time, he also had when Dr. Campisi evaluated him in 1982. And because the WCJ found based upon Dr. Schoen's May 17, 1986 report . . . that applicant was precluded from heavy work, it appears without contradiction that this same level of disability was present in 1982."

The majority further found that more than one year before the application was filed, applicant knew he had disability. The majority based this finding on the evidence that applicant had shortness of breath "at least as early as 1982" and that in May 1982 Dr. Campisi informed applicant his lungs were smaller than they should be.

Because Dr. Campisi told applicant that his industrial exposure to asbestos was the most likely cause of the abnormal X-rays and pulmonary function studies, the majority found that more than one year before the application was filed applicant knew or reasonably should have known that his exposure to asbestos caused his disability.

Relying principally on a series of Board panel decisions, Commissioner O'Neill, the dissenting Board panel member, construed the term "disability" in section 5412 as meaning temporary disability only. Because the parties stipulated applicant did not lose any time from work as a result of his lung condition before he filed the application, Commissioner O'Neill stated she would find the application was not barred by the statute of limitations.

Commissioner O'Neill concluded Manville failed to meet its burden of proving applicant had permanent disability more than one year before he filed the application. Commissioner O'Neill stated: "It is true that applicant's 1981 x-rays showed evidence of asbestosis. It is well-established, however, that asbestosis may be detected by an x-ray before there has been any significant respiratory impairment or disability. [Citations.] Indeed, Dr. Campisi's February 12, 1981 medical report on the first set of x-rays specifically declared that although applicant 'does . . . become[] short of breath with moderate exertion,' he 'does not appear to be remarkably limited by his respiratory symptoms' and he 'is able to perform his work and normal activities without limitations.' The clear import of these latter two quoted statements is that applicant was not work disabled." (Fns. omitted.) Regarding Dr. Campisi's conclusion that applicant's April 1982 pulmonary function studies established that applicant had a mild restrictive ventilatory defect, Commissioner O'Neill noted that under the California Code of Regulations, a "mild" condition is one that, while annoying, does not affect an employee's performance and is therefore not considered disabling.

Commissioner O'Neill stated she would find applicant lacked the requisite knowledge that he had disability. She concluded Dr. Campisi's May 1982 letter informing applicant that he had a mild restrictive defect would not "signify to a person without medical training that he has actual disability." She stated: "[D]efendant certainly did not carry its burden of establishing, through applicant's testimony or otherwise, that applicant understood this statement to mean that he had disability." Commissioner O'Neill further declared: "[E]ven if applicant's shortness of breath was significant enough to constitute disability, it cannot be said that applicant knew or should have known that this shortness of breath was industrially-caused. It is undisputed that applicant had a very extensive (and continuing) history of smoking which caused him to have chronic bronchitis and at least one respiratory infection. Thus, his shortness of breath may well have been caused by his smoking-related problems. Indeed, both Dr. Shanies and Dr. Wayne expressly attributed applicant's shortness of breath to those non-industrial factors."

Applicant petitioned for a writ of review. We have issued a writ of review, and the Board has filed its return.

## ISSUE

■ Applicant contends the application is not barred by the statute of limitations.

## DISCUSSION

Section 5405 provides in pertinent part that an application for workers' compensation benefits must be filed within one year from the date of injury. Section 5412 provides: "The date of injury in cases of occupational diseases or cumulative injuries is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment."

Section 5412 was enacted to codify the holding in *Marsh* v. *Industrial Acc. Com.* (1933) 217 Cal. 338 [18 P.2d 933, 86 A.L.R. 563] that in the case of a progressive occupational disease, the date of injury is the date on which disability occurs and by reasonable diligence the employee can discover the disability was industrially caused. (*Id.* at p. 351.) (See *Fruehauf Corp.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 569, 574-575 [68 Cal.Rptr. 164, 440 P.2d 236]; *Chevron U.S.A., Inc.* v. *Workers' Comp. Appeals Bd.* (1990) 219 Cal.App.3d 1265, 1270, fn. 4 [268 Cal.Rptr. 699].) In *Marsh* the court also concluded that a disability is compensable if it results in impairment of

earning capacity, even if the employee is able to perform the duties of his ordinary occupation. (*Marsh* v. *Industrial Acc. Com.*, *supra*, 217 Cal. at p. 344.)

The Workers' Compensation Act provides for temporary and permanent disability indemnity. (§ 4650 et seq.) ■ " 'Temporary disability indemnity is intended primarily to substitute for the worker's lost wages, in order to maintain a steady stream of income. [Citation.] Permanent disability indemnity has a dual function: to compensate both for actual incapacity to work and for physical impairment of the worker's body, which may or may not be incapacitating. [Citation.]' (*J. T. Thorp, Inc.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327, 333 [200 Cal.Rptr. 219].)" (*Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 294 [285 Cal.Rptr. 86, 814 P.2d 1328].)

■ Temporary disability is incapacity to work that is reasonably expected to be cured or materially improved with proper medical treatment. (See *W. M. Lyles Co.* v. *Workmen's Comp. App. Bd.* (1969) 3 Cal.App.3d 132, 136 [82 Cal.Rptr. 891]; see generally 1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation (rev. 2d ed. 1991) Temporary Disability Benefits, § 7.01[1], pp. 7-4 through 7-5.) Although wage loss is normally required for temporary disability indemnity (see *Huston* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 868 [157 Cal.Rptr. 355]), a retired employee may obtain temporary disability indemnity. (*MacDonald* v. *Western Asbestos Co.* (1982) 47 Cal.Comp.Cases 365, 367-369; see 1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation, *supra*, Temporary Disability Benefits, § 7.01[1], p. 7-5.)

California Code of Regulations, title 8, chapter 4.5, section 9735 (rule 9735) defines permanent disability as follows: "A disability is considered permanent after the employee has reached maximum improvement or his condition has been stationary for a reasonable period of time." In *General Foundry Service* v. *Workers' Comp. Appeals Bd.* (1986) 42 Cal.3d 331 [228 Cal.Rptr. 243, 721 P.2d 124], the court concluded the definition in rule 9735 is inadequate for a progressive occupational disease. (*General Foundry Service, supra,* at pp. 334-335.) The court held that in a case involving an insidious, progressive disease, the Board may tentatively rate permanent disability and order permanent disability advances based on the tentative rating. (*Id.* at pp. 333, 338.) The Board may then reserve jurisdiction to make a final determination of the percentage of permanent disability once the employee's condition has become permanent and stationary or the employee has become 100 percent permanently disabled. (*Ibid.*)

In *J. T. Thorp, Inc.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327 [200 Cal.Rptr. 219], an employee sought medical treatment for

asbestosis before he had any lost earnings as a result of industrial asbestos exposure. The court concluded the term "disability" in section 5412 should be given the same meaning as the term has in other parts of the Workers' Compensation Act. (*Thorp, supra,* 153 Cal.App.3d at p. 336.) The court stated "disability" as used in section 5412 means an impairment of bodily functions that results in an impairment of earning capacity. (*Thorp, supra,* 153 Cal.App.3d at p. 336; accord, *Permanente Medical Group* v. *Workers' Comp. Appeals Bd.* (1985) 171 Cal.App.3d 1171, 1179-1180 [217 Cal.Rptr. 873].) The court concluded that because the applicant had not yet suffered an impairment of earning capacity, he was not disabled and there had not yet been a date of injury within the meaning of section 5412. (*Thorp, supra,* at p. 337.)

In *Permanente Medical Group* v. *Workers' Comp. Appeals Bd., supra,* 171 Cal.App.3d 1171, the court concluded that because impairment of earning capacity does not require an actual loss of earnings, a retiree may be disabled within the meaning of section 5412 even if he has not lost wages as a result of the industrial injury. (*Permanente Medical Group, supra,* 171 Cal.App.3d at p. 1180, fn. 4.)

█   We agree with the construction of section 5412 by *Thorp* and *Permanente Medical Group* and hold that "disability" as used in section 5412 means either temporary or permanent disability. A specific statutory provision should be construed with reference to the entire statutory system of which it is a part. (See *Palmer* v. *Workers' Comp. Appeals Bd.* (1987) 192 Cal.App.3d 1241, 1248 [237 Cal.Rptr. 800].) If "disability" were construed as meaning only temporary disability, an employee who knew he had permanent disability could indefinitely delay in filing his application for workers' compensation benefits. We do not believe the Legislature intended such a result. Moreover, in *General Foundry Service* v. *Workers' Comp. Appeals Bd., supra,* 42 Cal.3d 331, the Supreme Court, citing *Thorp,* indicated the Board has no duty to determine the date of injury under section 5412 when an employee with a progressive disease has not yet suffered impairment of earning capacity. (*General Foundry, supra,* 42 Cal.3d at p. 337.)

█   In the present case, it is undisputed that applicant was never temporarily disabled as a result of his exposure to asbestos. We conclude substantial evidence does not support the Board's finding that applicant had permanent pulmonary disability more than one year before he filed his application.   █   Upon reconsideration, the Board may resolve conflicts in the evidence, reject the WCJ's findings, and enter its own findings. However, the Board's findings must be supported by substantial evidence in light of the entire record. (*Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280-281 [113 Cal.Rptr. 162, 520 P.2d 978].) In relying on the opinion of

a particular physician, the Board may not isolate a fragmentary portion of a report by the physician and disregard other aspects of the physician's reports that contradict or nullify the portion on which the Board has chosen to rely. (*Bracken* v. *Workers' Comp. Appeals Bd.* (1989) 214 Cal.App.3d 246, 255 [262 Cal.Rptr. 537]; see *Lamb* v. *Workmen's Comp. Appeals Bd.*, *supra*, 11 Cal.3d at p. 281.)

In finding applicant had permanent disability more than one year before he filed the application, the Board relied on Dr. Shanies's statement in his February 19, 1988, letter that if the 1986 pulmonary function test was in error and applicant has an "asbestos-induced restriction," the restriction was present in 1982. Dr. Shanies's actual opinion was that applicant does not have asbestos-induced lung disease and therefore he has no permanent disability attributable to the employment. Thus, Dr. Shanies's opinion does not support the Board's finding.

Moreover, as the dissenting Board panel member concluded, Dr. Campisi's statement in 1982 that applicant had a "mild restrictive ventilatory defect" does not support a finding that applicant was permanently disabled in 1982. California Code of Regulations, title 8, chapter 4.5, section 9727 provides: "Subjective Disability should be identified by: [¶] 1. A description of the activity which produces the disability. [¶] 2. The duration of the disability. [¶] 3. The activities which are precluded and those which can be performed with the disability. [¶] 4. The means necessary for relief. The terms shown below are presumed to mean the following: [¶] 1. A *severe* pain would preclude the activity precipitating the pain. [¶] 2. A *moderate* pain could be tolerated, but would cause marked handicap in the performance of the activity precipitating the pain. [¶] 3. A *slight* pain could be tolerated, but would cause some handicap in the performance of the activity precipitating the pain. [¶] 4. A *minimal* (mild) pain would constitute an annoyance, *but causing no handicap in the performance of the particular activity, would be considered as nonratable permanent disability.*" (Last italics added.)

In February 1981 Dr. Campisi found applicant could "perform his work and normal activities without limitations." There was no evidence that applicant's shortness of breath interfered with his performance at work, and no work restriction was imposed until after the application was filed. Thus, the record does not support the Board's assertion that Dr. Campisi used the word "mild" to mean "slight." Because there is no substantial evidence that applicant had a ratable permanent disability before January 1985, his application was timely.

Even assuming applicant had a permanent disability that could have been tentatively rated more than one year before he filed the application (see

*General Foundry Service* v. *Workers' Comp. Appeals Bd.*, *supra*, 42 Cal.3d at p. 333), substantial evidence does not support the Board's finding that applicant then knew or reasonably should have known he had permanent disability. In *Chambers* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 556 [72 Cal.Rptr. 651, 446 P.2d 531], an employee with a third grade education worked in a room with a heavy amount of dust. He did not wear a mask or breathing apparatus. In 1963 he developed shortness of breath and in 1964 he was unable to work. He was diagnosed with emphysema and informed by his physician that the disease was not work-related. In December 1966 he read an article stating that inhalation of dust can cause emphysema. Shortly thereafter, the employee filed his application for workers' compensation benefits.

The *Chambers* court held that the employer did not meet its burden of proving the employee failed to use reasonable diligence to discover the cause of his disability. (*Chambers* v. *Workmen's Comp. App. Bd.*, *supra*, 69 Cal.2d at p. 561.) The court stated a finding that in the exercise of reasonable diligence the employee should have known he had industrially caused disability is not supported merely by evidence that the employee knew he had some symptoms. (*Id.* at p. 559.) The court also found it significant that the employee's physician had concluded the emphysema was not work-related. (*Id.* at p. 561.)

In *City of Fresno* v. *Workers' Comp. Appeals Bd.* (*Johnson*) (1985) 163 Cal.App.3d 467 [209 Cal.Rptr. 463], the court held that an employee is not charged with knowledge that he had industrially caused disability in the absence of medical advice to that effect unless the nature of the disability and the employee's training, intelligence, and qualifications are such that the employee should have recognized he had industrially caused disability. (*Id.* at p. 473; but see *Nielsen* v. *Workers' Comp. Appeals Bd.* (1985) 164 Cal.App.3d 918, 929-931 [210 Cal.Rptr. 843] [absence of medical opinion of industrial disability is merely one important factor to consider, particularly where the causes of the disability are not obscure or debatable].)

In the present case, there are conflicting medical opinions as to whether applicant currently has industrially caused permanent pulmonary disability. Applicant's treating physician concluded in 1981 that applicant could perform his work without limitation and in 1982 informed applicant that his lung condition was "mild." No work restriction was imposed before January 1985, when the application was filed, and there was no evidence that the lung condition interfered with applicant's ability to work. We therefore conclude the Board erred in rescinding the WCJ's finding that the case is not barred by the statute of limitations.

DISPOSITION

The May 30, 1990, decision after reconsideration by respondent Workers' Compensation Appeals Board is annulled, and the matter is remanded to the Board for further proceedings consistent with the views expressed herein. Upon remand, the Board is directed to affirm the WCJ's finding that the case is not barred by the statute of limitations and to consider the other contentions raised in Johns-Manville Sales Corporation's petition for reconsideration.

Petitioner, Ernest Chavira, shall recover his appellate costs.

Devich, Acting P. J., and Vogel, J., concurred.